UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

-v-

JONATHAN HARRIS,

                                        Defendant.

---

15 Cr. 445-11 (PAE)

<u>ORDER</u>

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from defendant Jonathan Harris seeking his release from Federal Correctional Institution Gilmer ("FCI Gilmer") pursuant to 18 U.S.C. § 3582(c), in light of the risk that the COVID-19 pandemic presents for inmates.  *See* Dkts. 1127 ("Def. Ltr."), 1143 ("Def. Mem."); *see also* Dkts. 1149 (reply letter), 1150 (letter supplying additional case authority).  The Government opposes this request.  *See* Dkt. 1148 ("Gov't Mem.").  For the following reasons, the Court denies this application.

Harris was a member of the 18 Park gang, based out of the Patterson Houses in the Bronx.  Gov't Mem. at 1.  As a member of 18 Park and in furtherance of its enterprise, Harris participated in a litany of violent acts between 2011 and his arrest in 2015.  On five separate occasions, he fired gunshots at other people, often gang rivals, and at least once with the intent to kill.  *See* Dkt. 868 ("Sent. Tr.") at 23–25.  In one of these incidents, Harris shot the hat off the head of a police officer, who was, fortunately, unharmed.  *Id.* at 24.  In another, he fired shots at an individual whose brother, Brandon Howard, had been murdered in 2008 by 18 Park leader Jonathan Rodriguez.  *Id.*  On another occasion, he, along with several other 18 Park members, personally assaulted and stabbed another rival gang member in a barber shop in the Bronx.  *Id.*

On August 10, 2017, after several of his co-defendants were convicted at two trials, Harris pled guilty to two counts of a superseding indictment: conspiring to participate in a racketeering enterprise in violation of 18 U.S.C. § 1962(d), and using a firearm, which was discharged, during and in connection with both a racketeering conspiracy and a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A)(i), (ii), (iii). *See* Dkt. 823 ("Plea Tr.") at 8.  The latter carried a mandatory minimum sentence of 60 months' imprisonment, to run consecutively to any other sentence imposed.  On December 11, 2017, the Court imposed a sentence of 132 months' imprisonment—below the effective guidelines range of between 195 and 228 months' imprisonment—to be followed by five years' supervised release.  Sent. Tr. at 6, 40.  To date, Harris, who was arrested in September 2015, has served less than half of that sentence.  His estimated release date is June 18, 2025.

On August 11, 2020, the Court received a letter from Harris seeking early release in light of the COVID-19 pandemic.  *See* Def. Ltr. at 1–2.  On September 11, 2020, Harris's appointed counsel filed a memorandum in support of his motion.  Counsel argues that compassionate release is warranted here in light of the current pandemic, the fact that Harris has served nearly half of his original sentence, Harris's productive activities in prison, and his desire to care for his elderly grandmother.  *See* Def. Mem.  On September 18, 2020, the Government opposed Harris's motion.  It argues that no compelling and extraordinary reasons support his release and that, even if such reasons were present, release is inappropriate under the sentencing factors set out in 18 U.S.C. § 3553(a).  *See* Gov't Mem.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [Bureau of Prisons ("BOP")] to bring a motion on the defendant's behalf," a court may reduce a defendant's sentence if it finds

that "extraordinary and compelling reasons warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i).  The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).  Originally, § 3582(c)(1)(A) did not permit imprisoned persons to initiate compassionate release proceedings, and instead required the BOP to seek such release on their behalf.  *United States v. Ebbers*, 432 F. Supp. 3d 421, 422–23 427 (S.D.N.Y. 2020).  However, with the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, Congress amended the law to allow defendants independently to seek compassionate release relief from federal courts.  *Ebbers*, 432 F. Supp. 3d at 422–23.

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence.  *Id.* at 427 (citing 28 U.S.C. § 994(t)).  The Commission did so in U.S.S.G. § 1B1.13 and its corresponding commentary, which, *inter alia*, (1) define various circumstances that present extraordinary and compelling reasons justifying release; and (2) require that a defendant not be a danger to the community.  *Id.* § 1B1.13(1)–(3) & cmt. n.1(A)–(D).  But the Commission has not updated that provision to reflect the First Step Act's amendment to § 3582(c)(1)(A), and its guidance refers only to a "motion of the Director of the Bureau of Prisons."  *Id.* § 1B1.13.  Accordingly, the Second Circuit has recently held that U.S.S.G § 1B1.13 "is not 'applicable' to compassionate release motions brought by defendants," rather than by the BOP, and "cannot constrain district courts' discretion to consider whether any reasons are extraordinary and compelling" in such cases.  *United States v. Brooker*, No. 19-3218, 2020 WL 5739712, at *6 (2d Cir. Sept. 25, 2020); *see also id.* at *7 ("Neither Application Note 1(D), *nor anything else in the now-outdated version of Guideline § 1B1.13*, limits the district court's discretion." (emphasis added)).

3

Consistent with *Brooker*, when assessing a motion brought directly by an imprisoned person rather than by the BOP, the Court is constrained neither by U.S.S.G. 1B1.13's enumeration of extraordinary and compelling reasons, nor by its freestanding requirement that the defendant seeking release not pose any danger to the community.[1]  Rather, the Court may "consider the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release."  *Id.* at *7.  However, even if such reasons are present, the Court must also assure itself that release is consistent with "the factors set forth in section 3553(a) to the extent that they are applicable."  18 U.S.C. § 3582(c)(1)(A).

Here, Harris has not articulated extraordinary and compelling reasons justifying the grant of compassionate release.  To be sure, the COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation.  It presents a clear and present danger to free society for reasons that need no elaboration.  The crowded nature of federal detention centers in particular presents an outsize risk that the COVID-19 contagion, once it gains entry, will spread.[2]  And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself.  For these reasons, in the past months, various courts, including this one,

---

[1] Until *Brooker*, this Court applied the Commission's guidance to motions for compassionate release, even when brought by imprisoned persons rather than by the BOP.  *See, e.g.*, *United States v. Hernandez*, 451 F. Supp. 3d 301, 303 (S.D.N.Y. 2020); *Ebbers*, 432 F. Supp. 3d at 428.  Consistent with *Brooker*, however, the Court now recognizes that reliance on U.S.S.G. § 1B1.13 is appropriate only in cases initiated by the BOP.

[2] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (May 20, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, --- F. Supp. 3d ---, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (S.D.N.Y. Mar. 31, 2020) (citing *Interim Guidance on Management of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control & Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

have ordered the temporary release of inmates held in pretrial or presentencing custody[3] and the

compassionate release of high-risk inmates serving federal sentences.[4]

Harris's case, however, is different.  He is 25 years old and does not claim to have any

medical condition that subjects him to heightened risks were he to contract COVID-19.  *See*

Gov't Mem. at 2.  Instead, he argues that two other circumstances establish extraordinary and

compelling reasons justifying his release.  First, he contends that the general danger of

contracting COVID-19 in FCI Gilmer, compounded by his racial and ethnic background, present

such extraordinary circumstances.  *See* Def. Mem. at 6–7.  But Harris is not materially more

vulnerable to the effects of COVID-19 than an average person incarcerated at FCI Gilmer, and his

---

[3] *See, e.g.*, *United States v. Chandler*, --- F. Supp. 3d ---, No. 19 Cr. 867 (PAC), 2020 WL
1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C.
§ 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v.
McKenzie*, --- F. Supp. 3d ---, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y.
Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant
who had pleaded guilty to single count of assault with a deadly weapon and had previously been
released on bond); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y.
Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had
pleaded guilty to a narcotics offense); *cf. United States v. Stephens*,--- F. Supp. 3d ---,
No. 15 Cr. 95, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's
request for reconsideration of bail conditions and releasing him to home confinement, while
noting that, in the alternative, § 3142(i) would necessitate his temporary release).

[4] *See, e.g.*, *United States v. Wilson*, 16 Cr. 317 (PAE), Dkt. 656 at 4–7 (S.D.N.Y. Aug. 31, 2020)
(ordering compassionate release of defendant with heighted vulnerability who had served the
substantial majority of his sentence and played a low-level role in a drug trafficking conspiracy);
*United States v. Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (S.D.N.Y. Aug. 27, 20) (ordering
compassionate release of elderly defendant, who had serious medical conditions and played a
low-level role in a drug trafficking conspiracy); *United States v. Davies*, No. 18 Cr. 390 (PAE),
Dkt. 479 at 4–7 (S.D.N.Y. June 26, 2020) (ordering compassionate release of elderly defendant,
who had serious medical conditions and played low-level role in drug trafficking conspiracy);
*United States v. Brown*, No. 18 Cr. 390 (PAE), Dkt. 472 at 4–7 (S.D.N.Y. June 17, 2020) (same);
*United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (S.D.N.Y. Apr. 6, 2020)
(ordering compassionate release of defendant with an immune-inflammatory disease who had
served all but 34 days of a four-month sentence).

circumstances are far less compelling than those of the various defendants whose release the Court has ordered under § 3582.  *See supra* p. 4 n.4.

Second, Harris identifies his desire to care for his grandmother as a reason supporting release.  Def. Mem. at 8.  Although Harris's desire to aid his grandmother is laudable, as is his commitment to caring for his family, these do not present extraordinary and compelling reasons warranting release.  Many imprisoned persons have familial obligations, and although the pandemic may impose additional strains, those present in Harris's case do not appear to be compelling.  Harris has not suggested that he is the only available caregiver for his grandmother. In fact, his counsel represents that, although Harris's additional support would be welcome, his grandmother's daughter and son are available to assist her throughout the week.  *See* Def. Mem. at 7.  Accordingly, although the pandemic presents extraordinary circumstances, Harris has not offered a compelling reason arising from the pandemic for his release.

In any event, even if this first, threshold factor favored Harris's release, his request for a reduction of sentence is inconsistent with the factors set out in 18 U.S.C. § 3553(a).  *See* 18 U.S.C. § 3752(c)(1)(A).  Two of those factors—the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care," 18 U.S.C. § 3553(a)(1), (2)(D)—often favor a defendant's early release where the defendant has a condition making him unusually vulnerable to COVID-19.  Even if that were the case here— although, as noted, it is not, as Harris does not have any such condition—those two factors are outweighed by the combined force of several others: "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant."

Harris's conduct in this case profoundly endangered public safety. As the Court reviewed at his sentencing, Harris "went on a three-plus year shooting and stabbing spree." Sent. Tr. at 32. He engaged in "grave and potentially deadly acts of violence spanning a little under a four-year period," reflecting a "basic disrespect for human life." Sent. Tr. at 25. But for sheer luck, those acts could well have led to any number of deaths. *Id.* The serious and violent nature of these actions requires a substantial sentence in order "to provide just punishment for the offense." 18 U.S.C. § 3553(a)(2)(A).

Moreover, the number of such attacks, spread over several years, demonstrates both the need for specific deterrence and a proclivity towards violence that gives rise to a strong interest in protecting the public from Harris. *See id.* at 26–28, 31; *see also id.* at 32 ("That suggest[s] at least some predisposition on [his] part towards violence; [he] certainly [wasn't] ill-disposed towards it."). Over the course of five separate incidents, he continued intentionally shooting at perceived rivals, running the risk of wounding or killing both his targets and bystanders, undeterred. Although the Court found it unclear at sentencing whether Harris's violence was uniquely tied to 18 Park—which today does not exist in the same form it did when Harris was arrested—or rather "that there was some part of [him] that was drawn to this violence," *id.* at 32, the Court remains convinced that, even today, there is an interest in "protect[ing] the public from further crimes of" Harris. 18 U.S.C. § 3553(a)(2)(C).

Considering these factors at sentencing, the Court imposed a term of 11 years in prison. That sentence, substantial as it was, fell well below the guidelines range of between 195 and 228 months' imprisonment and represented a downward variance from the applicable guidelines range. *See id.* at 21, 40. The Court cannot find that a sentence less than half the length imposed, which Harris now seeks, is compatible with the important interests undergirding § 3553(a).

In arguing to the contrary, Harris contends that the unexpected rigors of incarceration in a time of COVID-19 and his rehabilitation in prison—particularly his educational achievements—call for a sentence lower than was warranted at the time the Court imposed his original sentence. Def. Mem. at 8–9.  To be sure, the Court recognizes that a day spent in prison under the conditions occasioned by the pandemic is not equivalent to an ordinary such day.  And it commends Harris for productively using his time in prison, even in the face of these trying circumstances.

But neither of these facts supports reducing Harris's sentence by more than half.  To release Harris this early in his term of imprisonment would disserve the interests embodied in the Court's original sentencing determination—most significantly, the need for the sentence imposed to reflect the need for just punishment.  For this reason, the Court has denied compassionate release applications by many defendants, including co-defendants of Harris's, which were made relatively early in their prison terms—even when the defendant had a health condition indicative of heightened vulnerability to COVID-19.  *See, e.g.*, *United States v. Romero*, No. 15 Cr. 445 (PAE), 2020 WL 2490027, at *1 (S.D.N.Y. May 14, 2020) (denying compassionate release for active member of 18 Park who had engaged in shootings and had served "approximately 54 months of his significantly below-guidelines sentence of 78 months' incarceration"); *see also United States v. Francisco*, No. 19 Cr. 131 (PAE), Dkt. 416 at 1, 5 & n.5 (S.D.N.Y. June 29, 2020) (denying compassionate release where defendant had served only 60% of his sentence); *United States v. Denard Butler*, No. 18 Cr. 834 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (denying compassionate release motion for defendant diagnosed with asthma where defendant had served only 15 months of a 60-month sentence).

In contrast, Harris's circumstances diverge from those of the defendants whose compassionate release the Court *has* granted in recent months, in recognition of the changed circumstances presented by COVID-19.  Those defendants suffered from gravely concerning medical ailments and/or had served a substantially greater proportion of their sentences, such that the Court found the sentence resulting from a grant of compassionate release consistent with the § 3553(a) factors.  *See, e.g.*, *Simon*, 18 Cr. 390 (PAE), Dkt. 507, at 5–9 (ordering compassionate release of elderly defendant who had served over half his sentence and suffered from, *inter alia*, HIV, cancer, and hypertension); *Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 at 2–4 (ordering compassionate release of co-defendant of Harris's who had served all but seven months of an 88-month sentence); *Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 at 2–4 (same for defendant who had served all but 34 days of a four-month sentence); *Hernandez*, 2020 WL 1684062, at *3 (same for defendant who had served 17 months of a 24-month sentence and was scheduled for release in four months); *United States v. Benjamin*, No. 15 Cr. 445 (PAE), Dkt. 1144 at 6–7 (same for co-defendant of Harris's who had asthma and had served nine years of his 10-year sentence).  That is not so here.  The Court thus finds that the § 3553(a) factors continue to require Harris to serve the remainder of the sentence the Court originally imposed.

Finding that the § 3553(a) factors are not compatible with the reduction of sentence sought, the Court denies Harris's motion for compassionate release or reduction of sentence pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: September 29, 2020
New York, New York

9